JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

12-CV-371

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Willard Nuel

**DEFENDANTS**

Capital One Bank, N.A.

12    371

**(b)** County of Residence of First Listed Plaintiff    Bucks
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Stuart A. Eisenberg, McCullough Eisenberg, LLC
65 West Street Road, A-105

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS— Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. 1961, et seq.

Brief description of cause:
Conspiracy to wrongly charge late fees on mortgages

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE Emil Ludwig    DOCKET NUMBER 11-cv-02024

DATE
01/24/2012

SIGNATURE OF ATTORNEY OF RECORD
Stuart A. Eisenberg

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

JAN 2 4 2012

**EL**        **UNITED STATES DISTRICT COURT**        **12**        **371**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1980 STREET ROAD NEW HOPE, PA 18939

Address of Defendant: 1680 CAPITAL ONE WAY, McLEAN, VA 22102

Place of Accident, Incident or Transaction: BUCKS COUNTY, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☒ No☐

Does this case involve multidistrict litigation possibilities?     Yes☐ No☒

*RELATED CASE, IF ANY:*
Case Number: 11-02024     Judge: EMIL LUDWIG     Date Terminated: NOT TERMINATED

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐ No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☒ No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☒ No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
   (Please specify) 18 USC 1961, ET SEQ

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, STUART A. EISENBERG, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 1/24/12     _____ STUART A. EISENBERG     12433
                  Attorney-at-Law                                 Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is ☐ related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1/24/12     _____     12433     JAN 24 2012
                  Attorney-at-Law             Attorney I.D.#

CIV. 609 (6/08)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

WILLARD NUEL

v.

CAPITAL ONE (USA), N.A.

CIVIL ACTION

NO. 12     371

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( )

1/24/12
Date

Attorney-at-law

PLAINTIFF
Attorney for

215-957-641
Telephone

215-957-9140
FAX Number

MLAWIFF-C@AOL.com
E-Mail Address

(Clv. 660) 10/02

JAN 24 2012



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLARD NUEL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, 1980 Street Road New Hope, PA 18938, | : : : : : | CIVIL ACTION<br>CLASS ACTION<br>**12    371**<br> |
| Plaintiffs | : : | 12-cv- |
| v. | : | BREACH OF CONTRACT |
| CAPITAL ONE BANK, N.A. CAPITAL ONE FINANCIAL CORP. 1680 Capital One Drive McLean, Virginia 22102 | : : : : : | 18 U.S.C. § 1961, *ET SEQ.* |

## CLASS ACTION COMPLAINT IN CIVIL ACTION[1]

**I.    PARTIES**

1.    Plaintiff, Willard Nuel ("Plaintiff" or "Nuel"), is an individual residing at 1980 Street Road, New Hope, Pennsylvania, Bucks County. Plaintiff is a citizen of the Commonwealth of Pennsylvania.

2.    Plaintiff is a mortgagor of a mortgage which is and has been serviced by defendant, Capital One Financial Corporation and its wholly owned subsidiary, Capital One Bank, N.A.(hereinafter referred to as "CONA"). Plaintiff is the owner of 1980 Street Road, New Hope, PA 18938.

3.    Plaintiff is a consumer and all transactions which form the bases of this complaint are consumer and consumer credit transactions which arose solely for personal, household, or

---

[1]This is the second case for Plaintiff filed in this Court, the first case docketed as *Willard Nuel, For Himself and For All Others Similarly Situated v. Capital One Bank (USA), N.A.*, 11-cv-02024 EL, incorporated herein by reference as if set forth herein at length. The first *Nuel* case (hereinafter referred to as the "First Case") was filed on March 24, 2011, and is pending the Court's decision of a Rule 12(b)(6) Motion. A motion will be filed to consolidate the First Case into the captioned case.

1



family use and purpose. Plaintiff brings this action on behalf of himself and on behalf of a class of mortgagors of CONA, as more fully defined below.

4.     This suit is filed on behalf of Plaintiff, individually, and on behalf of a Class (the "Class"). The Class of which Plaintiff is representative is comprised of persons who are now or have been mortgagors of loans serviced by CONA and who have been wrongfully charged late charges on mortgage payments made timely, and before the date on which later charges would have become applicable. The names and addresses of the individual members of the Class are not yet known. The term "Plaintiff" is intended to refer to Plaintiff, Willard Nuel, and the members of the Class, collectively, unless the context specifically indicates otherwise.

5.     It is believed that CONA is a corporation with its principal place of business in Virginia. CONA does its payment processing in Baltimore Maryland[2]. CONA transacts the business of servicing[3] mortgages, *inter alia,* throughout the United States, including the Commonwealth of Pennsylvania.

6.     CONA, it is believed by its duly authorized officers, directors, employees and other representatives, systemically and systematically intentionally charges its mortgagors late fees for the sole purpose of enhancing its bottom line profits, all as more fully discussed below.

---

[2] At "Payment processing, Capital One, N.A., PO Box 17000, Baltimore, MD 21297-1000
[3] The servicer of a mortgage is one who is responsible for certain activities involved in mortgage administration and operations, such as receiving payments, ensuring hazard insurance on the property, overseeing payment of taxes (and hazard insurance), imposing late fees and other appropriate and applicable charges, and making distribution of proceeds to the real or beneficial owner of the mortgage, most commonly referred to as the "investor". Often, the "servicer" is not the real owner of the mortgage. In consideration therefor, the servicer derives for its own benefit fees, commissions, and other remuneration from the real owner of the mortgage. One of the benefits of charging late fees is that the servicer keeps late fees that are paid.

2

## II.    JURISDICTION AND VENUE

7.      This Class Action Complaint in Civil Action is properly within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania because of the defendant's violations of 18 U.S.C.A. §1961, *et seq.*, the *Racketeer Influenced And Corrupt Organizations Act* ("RICO").   The activity complained of occurred in this district, involving residents and citizens of this district, and real property situated in this district.

8.      In the alternative and/or the cumulative, this Class Action is properly within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1322(d)(2), for the following reasons:

a.      It is believed and therefore averred that the total value of the case exceeds $5,000,000.00, exclusive of interest and costs;

b.      The putative Class consists of members who are citizens of states different than Plaintiff;

c.      It is believed and therefore averred that more than two-thirds (2/3) of the putative Class members are citizens of states other than Pennsylvania;

d.      Defendant is a citizen of a state other than Pennsylvania;

e.      The claim asserted does involve issues of an interstate interest.

9.      Venue is proper within the United States District Court for the Eastern District of Pennsylvania for:

a.      Defendant conducts business in this district;

b.      The representative Plaintiff resides in this district and the real estate which is the basis of the Class representatives' action is in this district;

3

c.     Defendant has maintained significant contacts in this district, directly and indirectly, and is believed authorized to do business in this district.

## III.   **SUMMARY STATEMENT OF THE CASE**

10.     The case arises because of a systemic and systematic practice by CONA involving its servicing of mortgages and it's imposition of certain late charges when the respective monthly payments for which the late charges have been imposed are and have been, in fact, current.

11     The applicable mortgage document, the Note, provides that payments for the monthly mortgage are due on a specific date; however, late charges are not applicable if the mortgagor(s) makes a full[4] monthly payment by the end of the fifteenth day after the date due, or after sixteen (16) days. Thus, if the mortgage payment is due on the first of the month, if the full monthly payment is made by the end of the 16th of the month, no late charge is permitted or applicable. *See* Exhibits "A" and "B", representing the governing documents:  the mortgage and note of Plaintiff.

a.     The Note, Exhibit "B" hereto, states, at paragraph 7 thereof:  "If the Note Holder [CONA] has no received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I [obligor] will pay a late charge to the Note Holder."

b.     The calculation is as follows:  The date due is the first of the month, according of paragraph 3(A) of Exhibit "B", the Note, plus "fifteen (15) calendar days after the date it is due", equals 16 days.  Thus, if payment is not made by the end of the 16th day of the month, a late charge is incurred.

---

[4]Monthly mortgage payments for residential mortgage generally consist of principal and interest; often, these monthly mortgage payments also include "escrow" which consists of advanced payments for homeowners' insurance and/or property taxes.

4

12.     CONA is charging for late charges when, in fact, the Plaintiff and members of the Class have made full monthly mortgage payments when due and prior to the date upon which a late charge is applicable.

13.     Furthermore, when, in a month(s) subsequent to the wrongful late charge, CONA pays itself the late charge out of the then-current full monthly payment for the succeeding month, the latter payment is then deemed to be "short" by CONA, and a portion of each ensuing payment is used for the prior month's wrongful late charge, perpetuating a continuing series of late charges, all emanating from the initial, and subsequent, wrongful late charge.

14.     In fact, the collection of "late" fees and similar charges, and the application thereof, are governed by law and by contract, *inter alia*. The contractual provisions for "late fees" are set in mortgage documentation consisting of:   The security agreement (often referred to as the "Trust Instrument" or "Mortgage") and the Promissory Note. This documentation provides for late charges upon the occurrence of specifically defined payment date deadlines. *See* Exhibits "A" and "B".

15.     Furthermore, the collection of late fees by the servicer is often reiterated in the monthly (or other period basis) statement or coupon, as a reminder to the mortgagor.

16.     Regardless of the contractual restrictions imposed upon the mortgage servicer not to impose a late charge until after the date certain, defendants have prematurely imposed late charges upon the accounts of its mortgagors, and/or have misapplied principal and interest payments, and possibly other ascribable payments as a result of the wrongful taking of money in the guise of late charges.

5

17.   As a matter of course and policy, however, CONA systemically, systematically and regularly imposes late charges upon payments received by CONA that were actually paid on time.

18.   These wrongful charges, payment of these late charges, and other wrongful acts such as misapplication of payments, once imposed by CONA, are required to be paid by the borrowers, otherwise the loan is considered in default, and the mortgagor(s) become subject to dunning efforts to collect, misapplication of payments, and even foreclosure.

19.   Thus, Plaintiff, on behalf of himself, and all others similarly situated, seeks to put an end to these oppressive and unconscionable practices which breach the contractual agreements between the parties and otherwise violate such laws as federal RICO, and Pennsylvania's Unfair Trade Practices and Consumer Protection laws.  To accomplish this objective, Plaintiff has come to this Court seeking appropriate damages.

## IV.   CLASS ACTION ALLEGATIONS

20.   This case is properly maintainable as a Class Action pursuant to and in accordance with Federal Rule of Civil Procedure ("F.R.C.P.") 23(a), *et seq*:

(1)   On belief, the Class is so numerous that joinder of all members is impractical.

(2)   There are substantial questions of law and fact common to the Class.

(3)   The claims of the representative Plaintiff is typical of the claims of the members of the Class.

(4)   The representative Plaintiff will fairly and adequately protect the interests of the Class.

21.     This case is properly maintainable as a Class Action pursuant to and in accordance with F.R.C.P. 23(b)(3).

a.      The issues of fact common to the members of the Class, as required by Local Rule of Civil Procedure ("Local Rule") for the Eastern District of Pennsylvania, 23.1(b)(2)(D), are set forth below in paragraph 15.b.(1), et seq.

b.      The questions of law common to the members of the Class, as required by Local Rule 23.1(b)(2)(D) are set forth below in paragraph 15.

c.      The questions of law and the questions of fact predominate for the Class over any questions of law and/or fact affecting only individual members of the Class.

d.      A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class are overwhelmingly predominant.

e.      As the questions of law and of fact are common to the members of the Class, and considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

f.      There is no reason why the litigation should not proceed in this particular forum.

g.      There are no unusual difficulties foreseen to be encountered in the management of this Class action.

h.      Plaintiff is not aware of any litigation involving the captioned parties with the issues as set forth herein, except for the existing case already filed against CONA by Plaintiff,

7

Willard Nuel designated and docketed as *Willard Nuel, and All Others Similarly Situated v. Capital One Financial Corporation,* 11-cv-02024 EL ( the "First Case")[5].

  (i)  The First Case cites, as causes of action, Breach of Contract, violation of 11 U.S.C. § 362,  and Unfair Trade Practices, 73 P.S. § 201-1, *et seq.;*

  (ii)  The First Case cites very similar activity as set forth in this case, but up to a date of March, 2011, while this case sets forth facts as current as December of 2011;

  (iii)  At the current time, the First Case is pending the Court's determination of a 12(b)(6) Motion to Dismiss;

  (iv)  The First Case does not contain a RICO count; this case does include a RICO count;

  (v)  One of the most significant difference between this case and the First Case is Plaintiff's learning that CONA is intentionally deflecting credit for timely payments so that it can collect the additionally charged late fees, a substantial addition to the "bottom line" of CONA;

  (vi)  The most significant difference is that, now, Plaintiff has proof that CONA receives the monthly mortgage payments on a specific date as CONA date-stamps the checks, and nonetheless holds them for deposit until the 17th day of the month or later, as also substantiated by the deposit information on the date-stamped checks and the monthly mortgage statements.

22.  The claim by Plaintiff, for himself and for and on behalf of the members of the Class, is justified as a Class Action for the following reasons:

---

[5]The acts and actions complained of in this current Complaint all occurred subsequent to the chronology of complained-about acts and actions of the First Case.

a.      Although the size of the Class is not specifically known, it is believed that the number of appropriate members of Class is in the thousands.

b.      The basis upon which Plaintiff claims to be an adequate representative of the Class is as follows:

(1)      Plaintiff is a homeowner, and mortgagor of the mortgagee of which defendant, CONA, is the servicing entity for the real mortgagee in interest (the investor). All members of the Class are/were (at all times relevant) homeowners, and mortgagors with defendant, CONA, servicing the respective mortgages;

(2)      Plaintiff granted a mortgage to CONA[6]. At the time of the mortgage transaction, Plaintiff executed various documents in favor of the mortgagee, including: Mortgage and Note, true and correct copies of which are attached hereto as Exhibits "A" and "B", respectively.

(3)      The Note specifically provides that the mortgage payments are due on the first of every month. The Note further provides that, if payments are not received within fifteen (15) days after the due date, and, therefore, by the end of the sixteenth (16th) of every month, a later charge will be imposed. See plaintiffs' Exhibit "B", paragraph 7(A) thereof. All members of the Class had granted to CONA, or a predecessor in interest (hereinafter referred cumulatively referred to ("CONA"), a mortgage and had executed a note in favor of CONA in which were set forth the provisions applicable to the imposition of late charges;

(4)      Therefore, if the monthly mortgage payment is paid on or before the 16th day of the month in which the payment is due, no late charge will be applicable. At all times relevant, all members of the Class had monthly mortgage payments pursuant to applicable Notes

---

[6] Plaintiff is the sole signatory, as mortgagor, on the mortgage documents; plaintiff and his wife, Kim, are both on the deed, as tenants by the entireties.

9

and Mortgages, due at a specific date, but specifying that late charges would only be applicable if received **after** a date certain or a date calculable vis-à-vis the written language of the documentation;

(5)     Plaintiff has made timely monthly mortgage payments to CONA since filing a bankruptcy petition[7], the most recent payments made for September, October, November and December of 2011. *See* the First Case for a list of timely payments which nonetheless resulted in wrongly assessed late charges.

(6)     Therefore, Plaintiff's mortgage payments have been timely made and CONA has had no right, in contract or law, to charge Plaintiff late charges;

(7)     Attached hereto as Exhibit "C", representing check #1137, dated September 1, 2011, for the full amount of the required mortgage payment, or $3,526.12. Note the date-stamp by Capital One, indicating its date of receipt as September 14, 2011;

(8)     *See* the endorsement on the back of Exhibit "C", indicating that the check was deposited by CONA on September 16, 2011;

(9)     *See* Exhibit "D", a true and correct copy of the "Customer Account Activity Statement" prepared by CONA, dated December 29, 2011, page 2 thereof, exhibiting that, on September 16, 2011, CONA charged Plaintiff with a late fee for the September, 2011, payment in the amount of $176.31;

---

[7]Plaintiff filed his bankruptcy petition and relief was granted on November 11, 2010. Plaintiff's bankruptcy number in the United States Bankruptcy Court for the Eastern District of Pennsylvania is 10-19808 JKF.

(10)    Attached hereto as Exhibit "E", representing check #1144, dated September 1, 2011[8], for the full amount of the required mortgage payment, or $3,526.12.  Note the date-stamp by Capital One, indicating its date of receipt as October 14, 2011;

(11)    *See* the endorsement on the back of Exhibit "E", indicating that the check was deposited by CONA on October 17, 2011;

(12)    *See* Exhibit "D", a true and correct copy of the "Customer Account Activity Statement" prepared by CONA, dated December 29, 2011, page 1 thereof, exhibiting that, on October 17, 2011, CONA charged Plaintiff with a late fee in the amount of $176.31;

(13)    *See* Exhibit "F", a true and correct copy of the Mortgage Statement dated October 17, 2011, on which the October payment, represented by Exhibit "E", received by CONA on October 14, 2011, is listed as having been paid on October 17, 2011;

(14)    Attached hereto as Exhibit "G", representing check #1157, dated November 5, 2011, for the full amount of the required mortgage payment, or $3,526.12.  Note the date-stamp by Capital One, indicating its date of receipt as November 16, 2011;

(15)    *See* the endorsement on the back of Exhibit "G", indicating that the check was deposited by CONA on November 17, 2011;

(16)    *See* Exhibit "D", a true and correct copy of the "Customer Account Activity Statement" prepared by CONA, dated December 29, 2011, page 1 thereof, exhibiting that, on November 16, 2011, CONA charged Plaintiff with a late fee in the amount of $176.31;

---

[8]Plaintiff states that the date of September 1, 2011, duplicating the date of the actual September payment is an error; that it should have been dated October 1, 2011.  Be that as it may, Exhibit "D" confirms Plaintiff's allegations.

11

(17)    *See* Exhibit "H", a true and correct copy of the Mortgage Statement dated November 17, 2011, on which the November payment, represented by Exhibit "G", received by CONA on November 16, 2011, is listed as having been paid on November 17, 2011;

(18)    Attached hereto as Exhibit "I", representing check #1165, dated December 7, 2011, for the full amount of the required mortgage payment, or $3,526.12. Note the date-stamp by Capital One, indicating its date of receipt as December 16, 2011;

(19)    *See* the endorsement on the back of Exhibit "I", indicating that the check was deposited by CONA on December 21, 2011;

(20)    *See* Exhibit "D", a true and correct copy of the "Customer Account Activity Statement" prepared by CONA, dated December 29, 2011, page 1 thereof, exhibiting that, on December 16, 2011, CONA charged Plaintiff with a late fee in the amount of $176.31. Furthermore, Exhibit "D" incorrectly states that the payment was made on December 21, 2011;

(21)    Thus, CONA has continued to charge plaintiff late charges attributed to each and every post-bankruptcy petition timely payment, from the date when all payments made on or before the 16th day of each month shall be deemed current.

(22)    Therefore, CONA has been wrongfully charging plaintiff for late fees on payments received by CONA prior to the 17th day of the respective month, and after the filing of the bankruptcy petition.

(23)    All members of the Class made timely mortgage payments[9] to CONA which, although received by CONA on or before the day prior to the day for which late fees were permitted to be charged, CONA nonetheless charged late fees to the members of the Class.

---

[9] "Timely" payments include, but are not limited to, post-petition mortgage payments made while the mortgagors are debtors in Chapter 13 bankruptcy proceedings.

(24)    Thus, CONA has been receiving the checks – payments – on a timely basis, date-stamping them in, and then holding the checks for deposit on the 17th day of the month, or the date upon which a late charge becomes applicable.

(25)    By law and by contract, these late fees were/are not permitted to be imposed by CONA upon the Plaintiff and upon any member of the Class;

(26)    State law, regardless of whatever state, does not permit the charge of such late fees upon the mortgagors, the members of the Class;

(27)    For each such payment by any mortgagor, CONA has overcharged by the percentage amount of each late fee which, in the case of the Plaintiff, is 5% of the full mortgage payment of $3,526.12;

(28)    Plaintiff believes that CONA is misapplying portions of the current, post-bankruptcy, petition monthly mortgage payments to late fees, and therefore utilizing a portion of current mortgage payments to be misapplied to the outstanding improper late fees, causing those mortgage payments to be therefore subject to late fees because they were insufficient to account for all principal and interest and escrow due for the payment from which the prior month's late charges were derived. There is, thus, the perpetuation by CONA of a series of late charges emanating from the prior misapplications for the improper late charge.

(29)    All members of the Class have suffered through the same scenario, with variations solely in the percentage and dollar amounts of late fees[10], and the due date prior to the date the late fee became appropriate. That which is not a variable in this same scenario, however, is that each member of the Class made mortgage payments received on or about the last

[10] In the overwhelming number of cases, the mortgage payments are due on the first of the month; there are exceptions, however, when mortgage payments are due on a date other than the first of the month. Nonetheless, the mortgage documents will provide for the sixteen day (1st day + 15 days = 16 days) period during which no late charge is permitted.

13

date before a late fee was permitted, by contract and/or law and each member of the Class nonetheless was charged a late fee;

(30)    CONA has received the payments timely, as shown by the date-stamping; however, CONA has held and applied these payments until a late charge became (becomes) applicable, and CONA deposits the payments when the late charges become applicable;

(31)    CONA therefore is charging late charges wrongfully, and, as a result, is enhancing its own "bottom line" by charging for and taking these unlawful late charges;

(32)    At all times relevant, the respective members of the Class were caused to pay or were otherwise responsible for these wrongful increments to their monthly mortgage payments through the late fees which were/are not appropriate;

(33)    At all times relevant, defendant acted with knowledge that no late fee was appropriate and CONA was not entitled to a late fee;

(34)    These charges and the evidence that the payments are timely received and held until the late fee "kicks in" reeks of intentional wrong-doing;

(35)    The proof of the intentional wrongful charging of late fees is evidenced by the fact that the First Case set forth similar allegations and CONA has done nothing to rectify the wrongful charging.

23.    The issues of fact, therefore, for all members of the Class are the same as set forth above, with minor, not substantial, variation.

24.    The questions of law governing the rights of each member of the Class are the same as they relate to the defendants:

a.    Are the charges for "late fees" ("these wrongful late fees") charged or imposed for timely full monthly mortgage payments received on or before the last day before which

14

such late fees are appropriate excessive, unconscionable, unreasonable, and/or otherwise illegal or improper?

      b.    Is defendant, CONA, negligent in imposing these wrongful late fees?

      c.    Is defendant, CONA, grossly negligent and/or reckless in imposing these wrongful charges?

      d.    Has defendant, CONA, imposed these wrongful charges knowingly and intentionally?

      e.    Are these charges systemic and systematic?

      f.    Are these wrongful charges "reasonable" and permissible within the context of the mortgage documentation?

      g.    Has CONA been under an obligation imposed by equity and/or law not to impose these wrongful charges?

      h.    Has CONA breached the grant of authority provided by the mortgagors in the mortgage documents by imposing these wrongful charges?

      i.    Has CONA breached its express contractual obligations to plaintiffs by the imposition of these wrongful charges?

      j.    Has CONA violated 18 U.S.C. §1961, *et seq.*, by charging these wrongful charges which have no basis in law or contract and are intentionally charged?

      k.    Has CONA engaged in unfair trade practices to plaintiff?

      l.    Has Plaintiff suffered damages as a direct and/or proximate result of the wrongful charges?

      m.    If so, is Plaintiff entitled to recovery of damages as follows?

           (i)    compensatory damages;

15

(ii)     other special damages;

(iii)     punitive damages;

(iv)     statutory damages;

(v)     treble damages or damages as a multiple of compensatory and other special damages;

(vi)     costs;

(vii)     attorney's fees;

(viii)     other relief as the Court may deem appropriate.

n.     Is defendant, CONA, required by law or equity to disgorge these improperly charged fees and any other fees derived as a result of this activity?

o.     Have the members of the Class been adversely affected as Plaintiff, and, if plaintiff has been injured as described above, have the members of the Class been so injured?

## V.     THE CLASS

25.     Paragraphs one through and including twenty-four above are incorporated herein by reference as if set forth herein at length.

26.     The above-named Plaintiff brings this action on behalf of himself and:

All persons in the United States of America whose mortgages are, were or have been serviced by CONA, and upon whom CONA has imposed late charges when, in fact, applicable monthly mortgage payments have been made on a timely basis and prior to the time when late charges may be lawfully and/or contractually imposed.

## I.     CAUSES OF ACTION

## COUNT II – RICO
## CLASS ACTION

27.     The averments of paragraphs one through and including twenty-six above are incorporated herein by reference.

28.     Each of the Plaintiffs and Defendant are "persons" within the meaning of 18 U.S.C. § 1961(3).

29.     At all relevant times, the Defendant, along with person or persons not yet identified, but who nonetheless "knowingly engage in 'directing the enterprise's affairs' through a pattern of racketeering activity"[11], have acted together and in concert, thereby constituting a group of persons associated together in fact for the common purpose of carrying out the unlawful scheme described above and hereinbelow.

30.     The unlawful scheme consists of the RICO Defendant, CONA, at the specific direction of an individual of individuals (the "conspirator(s)'[12]) whose identities are not yet known, intentionally withholding timely paid mortgage payments from being credited until on or after the date when a late payment would result in the charge for a late fee, and charging the mortgage account therefor.

31.     The Conspirators have functioned as a continuing unit in carrying out this unlawful scheme by and with the complicity and agreement of each and all of the conspirators, including, but not limited to CONA, by its officers, directors, managers, employees and/or other affiliated persons with the authority to so direct CONA.

32.     The Conspirators' association-in-fact (the "Enterprise") constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

33.     The Enterprise functions as a continuing unit, commencing at or before the

---

[11] *See City of Philadelphia v. Public Employees Benefit Svcs. Corp.*, 842 F. Supp 827, 1994 U.S. Dist. LEXIS 218, *24 (E.D. Pa. 1994).

[12] The individual or individuals defined as conspirator(s) in this cause of action, whose specific identities are not yet know, is/are nonetheless a person or persons in a position of management at and/or with CONA to the extent that the conspirator(s) directs that payments made timely will be withheld from application to the mortgage account until the date (normally the 17th of the respective month) upon which a late charge maybe assessed and charged to the respective mortgage account.

commencement of the Class period, and continuing throughout the Class period. By its nature, the Enterprise is open-ended and will continue indefinitely absent this litigation.

34.    The Conspirators each give substantial assistance to the Enterprise as a whole and to the unlawful activities and scheme through which its affairs are conducted.

35.    In furtherance of the affairs of the Enterprise, the Conspirator(s) has/have committed and continue to engage in a pattern of racketeering activity consisting of minimally hundreds or more predicate acts over the past four years, in violation of wire fraud and mail fraud during the Class period, as proscribed by 18 U.S.C. §§ 1341 and 1343.  *See* the "Statement of Facts", above, and the specific discussion below discussing mail fraud and wire fraud.

36.    Specifically, during the Class period, CONA has received payments from Plaintiff and members of the Class on a timely basis by way of the United States postal system, and payments from Plaintiff and members of the Class wire-transferred to CONA, and CONA, with aid and abetting of the conspirators, has withheld crediting these payments until the late charge time frame has been exceeded.

37.    Furthermore, CONA, after waiting to deposit the payments into its own account(s) until the late fee becomes applicable, deposits the payments into the United States wire system, in use by the banking industry to process mortgage payments, *inter alia.*

38.    When CONA then credits the Plaintiff's and Class members' mortgage accounts, CONA, all with the aiding and abetting of the conspirators, it intentionally and wrongly records the "current" payments as "late" payments on the next published Monthly Mortgage Statements, and uses the United States postal system to notify the Plaintiff and the Class members of the intentionally misstated late payments and the intentional misapplication of the late fee to the respective accounts

39.    In addition to using the United States wire system to perpetuate wire fraud upon Plaintiff and the Class members, and in addition to using the United States postal system to perpetuate mail fraud upon the Plaintiff and the Class members, CONA engages in bankruptcy fraud, as follows:

a.    When a Class member is in bankruptcy, pursuant to 11 U.S.C. Chapter 13, as is Plaintiff[13], and is current with required post-petition mortgage payments, the mortgage account is deemed "current" as all pre-petition mortgage arrears are in the Chapter 13 plan, and the debtor(s) is/are deemed to be current as long as post-petition payments are maintained on a post-petition current basis;

b.    Regardless of the "current" status of the Debtor, CONA nonetheless holds all timely-made payments until a late fee becomes applicable and,

c.    When the late fee becomes applicable, CONA then deposits the payment into its own bank account, using the United States wire system, in order that it may charge, and it does charge, the late fee which, as discussed above, is a false and fraudulent charge.

d.    This intentional wrongful charging, of which CONA has been and is aware, constitutes a form of theft and conversion, a form of fraud perpetrated upon the Debtors/Members of the Class.

e.    Under the guise of using the pre-petition arrears as rendering the mortgage accounts of the Plaintiff and members of the Class "in arrears", even post-petition as discussed above, CONA continues to charge the mortgage accounts these "late fees" failing intentionally to account for the Chapter 13 bankruptcy proceeding and accounting necessitated by the bankruptcy.

---

[13] Plaintiff is currently in a Chapter 13 in the United States Bankruptcy Court for the Eastern District of Pennsylvania, docketed as 10-19808 JKF, which was confirmed on January 12, 2012.

40.    At all times relevant, these communications were intentionally manifested in furtherance of the racketeering activity in which CONA, and conspirators, engaged.

41.    Furthermore, CONA, with the aiding and abetting by the conspirators, utilizes the United States Banking System in furtherance of and to manifest the racketeering activity as defined by the path of the monies that are paid into the banking system with the portion to which CONA has no entitlement, to wit:  the wrongly charged late fees.  These monies represent not only the fruits of the racketeering scheme, but vis-à-vis reinvestment, a means by which the racketeering activity is engendered and enhanced.

42.    There has been a relationship between the predicate acts, to wit:  The predicate acts involved a similar purpose, sought to achieve similar results, with similar participants utilizing similar methods.

43.    There has been continuity of the use of the pattern of racketeering activity as exemplified by the history involving the Plaintiff and members of the class, and there is a substantial threat that this type of activity is continuing and will continue in the future as a repetitive course of action, and for as long as the Enterprise – CONA - benefits financially by these unlawful efforts and the enhancement to its income and profits by the illicitly obtained late charges.

44.    Plaintiffs have suffered quantifiable damages measured by the dollar amount of the wrongful late charges and other charges resulting directly and proximately from the wrongful taking of the wrongfully charged late fees.

45.    The conspiracy is carried out by a simple and straightforward plan:  CONA receives a mortgage payment which, in reality, is a "current" payment, for which a late charge is not applicable, and CONA, with the aid, advice, direction and management input of the

conspirators, holds the payment and does not deposit it or mark it paid by the mortgagor, but deposits it after the later charge becomes applicable.

46.     In furtherance thereof, CONA falsely notes on its Monthly Mortgage Statements mailed to its mortgagors that the date the payment was received was the date on after which the late charge becomes applicable.

47.     In furtherance thereof, CONA takes the wrongfully charged late fee from the mortgage payment, therefore, "shorting" the mortgage payment, thus perpetuating future short payments.

48,     The key – the proof – of the intentional wrongdoing by CONA is provided by CONA, itself:

a.     When CONA receives the timely payment, it automatically date-stamps the payment instrument (check, money order, and the like).  *See* the exhibits of the payments attached hereto which show the date-stamp;

b.     Regardless of the date the date-stamp is applied (the date on which the check is received), CONA deposits the payment instrument into its own bank, the bank owned by it, as evidenced by the date of deposit on the back of each instrument on the back of the said instrument, and the date is invariably after the date-stamp and always after the date the late charge becomes applicable. *See* the exhibits of the payments attached hereto which show the deposit date;

c.     The Monthly Mortgage Statement issued by CONA specifically reflects that payment was made on the date on or after the date the late charge becomes applicable, which is clearly a falsehood. *See* the exhibits constituting the Monthly Mortgage Payments.

49.     All of this is done intentionally and with notice by the very plaintiff in this case

21

by the First Case that such activities are happening.

50.     It is believed and therefore averred that, regardless of the notice by the First Case, the profits derived by CONA as a result of these racketeering activities and the continuing predicate acts thereof, are so substantial as to ignore the First Case, probably as a nuisance.

51.     However, such profiteering by mail fraud, wire fraud, and bankruptcy fraud, adversely affects thousands of class members, including the plaintiff.

52.     This scheme was concocted by the conspirators, implemented by the conspirators, and perpetuated by the conspirators all for and on behalf of CONA.

53.     This scheme is carried out as a policy of CONA.

54.     The conspirators and CONA act in agreement one with the other to achieve the goal of achieving as much stolen, converted, late charges from the timely payments from the members of the Class, with the ultimate goal of achieving as much of these late charges to which CONA has no entitlement as possible.

55.     As noted above, and an intended necessary and foreseeable consequence of the foregoing transactions and communications during the Class period, Plaintiff and the members of the Class were caused injury and damage to their property by exactly the same operation as has adversely affected the plaintiff.

56.     Each and all of the conspirators actively participated in the direction, operation, or management of the Enterprise. CONA and the conspirators have played a vital, direct, important role in the operation of the Enterprise.

57.     The conspirators have violated RICO, as follows:

a.      The Conspirators conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

b.      In violation of 18 U.S.C. § 1962(d), the Conspirators conspired to conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity violative of 18 U.S.C. § 1962(c).

c.      As a direct and proximate result of violations by the Conspirators of 18 U.S.C. §§ 1341 and 1343 and bankruptcy fraud in furtherance of the Conspiracy, Plaintiff and the Class were caused to suffer injury.  These damages were caused by the Conspirators' unlawful predicate acts of racketeering and their RICO violations.

d.      Plaintiff's damages and the damages to the members of the Class are represented by the loss of the wrongful late charges and other fees and charges resulting from the use of the monthly mortgage payment full payment partially for the payment of the illegal late charges.

58.     In summary, therefore:

a.      "[CONA][has repetitively] committed two or more of the hundreds[14] enumerated predicate offenses during the past four years, at least;

b.      The predicate offenses involve racketeering activity constituting mail fraud and wire fraud and fraud utilizing the nation's banking systems;

c.      The predicate offenses involve bankruptcy fraud when the victim is in a Chapter 13 bankruptcy;

d.      Plaintiff is now aware of at least four transactions that contain the same factual scenario as discussed above, for the months of September, October, November and

---

[14] Each month a full mortgage payment is timely received and yet there is a wrongful delay in marking the account paid, with the late charge wrongfully taken, followed by the issuance of the monthly mortgage statement with the false information thereon, results in minimally three predicate acts per wrongful monthly charge.  Thus, there is the probability of thousands of such predicate acts per year, at least.

23

December, 2011, in addition to those cited in the First Case, and, when confronted with the fact, that for Plaintiff alone, thee have occurred at least twelve predicate acts with Plaintiff alone:

(1)     Each predicate act is separate and distinct from the others;

(2)     However, in each such transaction there are numerous predicate acts involving mail fraud, wire fraud and illegal use of the banking system, and, in some cases, bankruptcy fraud;

(3)     These transactions have occurred over the past four years, at least;

(4)     All of the acts in all of the cases involving plaintiff and the putative class members are similar;

(5)     Plaintiff believes that there are minimally thousand of victims; none other than Plaintiff identified as of this filing;

(6)     The perpetrators are not yet identified; however, the operation by CONA of the predicate acts and the persistent and continuing perpetuation of the patterns of racketeering activity had to have been orchestrated by persons of authority working for and employed by CONA;

(7)     The unlawful activity is based in the late charge scheme with the illegality and possible criminality in violation of the proscription of such charges as may constitute theft and criminal fraud;

(8)     Furthermore, the asserted mail fraud, wire fraud and bankruptcy fraud all arise out of the scheme to "cheat" plaintiff and the members of the Class out of millions of dollars;

(9)     All of the predicate acts complained of have the same purpose in every transaction, and each transaction has the same characteristics, and no isolated dealings;

24

(10)   The predicates acts are ensconced in the regular manner by which CONA conducts its business.

59.   In further summary, the participation of CONA and the conspirators in the RICO scheme is as follows:

a.   CONA, by its officers, directors, principals, management, agents, employees, and the like, are all associated one with the other and with the Enterprise and they actively participated in the affairs of the Enterprise;

b.   CONA and the conspirators formed and/or perpetuated an ongoing organization functioning as the Enterprise, to effect the illegal charges so thoroughly discussed herein: an association-in-fact;

c.   The unnamed and unknown conspirators each and all directed the activities of the Enterprise for CONA, as a corporate entity, requires such assistance in operating such a scheme.

60.   18 U.S.C. § 1341, defining mail fraud, states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ..., places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at

which it s directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined ... or imprisoned ... ."

61. In other words, mail fraud occurs when a person uses either or both of the following to commit or perpetuate or assist in committing or perpetuating a fraud:

    a. The United States Postal System, and/or

    b. An interstate carrier of mail-like matter, such as Federal Express, DHL, and the like.

62. CONA and the conspirators have utilized these postal and interstate carrier facilities in furtherance of the racketeering scheme and activity, as described above, and as set forth specifically and with particularity in the exhibits attached hereto.

63. All of the above mailed communications were in furtherance of the racketeering scheme.

64. 18 U.S.C. § 1343, defining wire fraud, states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ..., transmits or causes to be transmitted by means of wire ... in interstate or foreign commerce, any writings ... for the purpose of executing such scheme or artifice, shall be fined ... or imprisoned... ."

65. In other words, wire fraud occurs when a person uses either or both of the following to commit or perpetuate or assist in committing or perpetuating a fraud: telephones, facsimile (fax) equipment, the internet, and related devices.

66.    CONA and the conspirators have utilized these wire facilities in furtherance of the racketeering scheme and activity, as more fully set forth above and in the attached exhibits.

67.    There is no question that the use of the mail system was instrumental and in furtherance of perpetuating the racketeering activity and scheme promulgated by the participants in this comprehensive plot to criminally exploit and steal from plaintiff and the members of the putative class.

68.    There is no question that the use of the wire system, particularly the interstate wire system was instrumental and in furtherance of perpetuating the racketeering activity and scheme promulgated by the participants in this comprehensive plot to criminally exploit and steal from plaintiffs and the members of the putative class.

69.    There is no question of bankruptcy fraud in the wrongful charging of late charges for those members of the Class in Chapter 13 proceedings.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class described, and appointing Plaintiff as representative of the Class, and the undersigned as Class counsel;

B.    Requiring that the CONA and any additional defendants pay compensatory damages, statutory damages; attorney's fees and experts' fees; and

C.    Enjoining these Defendants from conducting such violative activity in the future, and

D.    Granting such other relief as the Court may deem appropriate

27

## COUNT II – CONTRACT
## CLASS ACTION – PLAINTIFFS V. CONA

70.     Paragraphs one through and including sixty-nine above are incorporated herein by reference as if set forth herein at length.

71.     The mortgage contract by and between plaintiff and CONA, by its predecessor in interest Chevy Chase Bank, F.S.B., which merged into CONA, w is a generic mortgage contract utilized by numerous mortgagees, mortgage servicers, MERS, and other related entities.

72.     The mortgage contract by and between CONA and the members of the Class is a generic mortgage contract utilized by numerous mortgagees, mortgage servicers, MERS, and other related entities.

73.     The generic mortgage contract includes the Mortgage and the Note, *inter alia. See* Exhibits "A" and "B".

74.     All of the elements of contract are present in the transactions involving the plaintiff, members of the Class, and CONA, to wit:

        a.      Offer and acceptance;

        b.      Consideration;

        c.      Mutual meeting of the minds.

75.     It is the contractual obligation of the plaintiff and members of the Class to make timely payments as prescribed by the Note.

76.     It is the contractual responsibility of CONA to receive mortgage payments and properly credit the mortgagors therefor.

77.     If plaintiff and any member of the Class should make a payment late, to wit:  after

28

the 16th of the respective month, CONA is entitled to charge a late charge therefor.[15]

78.     If a late charge is imposed, some mortgage servicers will pay themselves the late charge imposed from the prior month's late payment and take the late charge from the current month's full payment if not included, thus rendering the "current month's full payment" short, perpetuating "late charges" and creating additional arrears.

79.     Such application is in violation of the mortgage contract, specifically paragraph 2, thereof[16].

80.     When a contract is deemed current as a matter of law, as with post-petition bankruptcy payments made on a current basis directly to the mortgage servicer, and late fees are charged based on pre-petition arrears, such charges constitute not only a violation of the generic and universal contract by and between plaintiff and the members of the Class and CONA, and a violation of law.

81.     Members of the Class have paid these wrongfully imposed late fees.

82.     Plaintiff and the members of the Class have been imposed these wrongfully charged late fees which have been attempted to be collected by CONA.

83.     These charges violate the contract.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to

A.     Certifying the Class described, and appointing Plaintiff as representative of the Class, and the undersigned as Class counsel;

B.     Requiring that the CONA pay compensatory damages, restitution,

---

[15] The industry practice is that the servicer, in this case, CONA, is permitted to keep the late charge, even if not the investor or owner of the mortgage.  It is believed that CONA is the investor/owner/holder of the mortgage at this time.
[16] Plaintiff is missing pages 4 – 7 of the Mortgage.

statutory damages, as appropriate;

C.     Enjoining the Defendant from conducting such violative activity in the future, and

D.     Granting such other relief as the Court may deem appropriate.

## COUNT III - UNFAIR TRADE PRACTICES: 73 P.S. § 201-1, *ET SEQ.*
## PLAINTIFF V. CONA

84.     The averments of paragraphs one through and including eighty-four above are incorporated herein by reference as if set forth herein at length.

85.     Plaintiff is a consumer.

86.     Defendant is an entity which has placed its product for sale into the stream of commerce of the United States of America, and made such product available to the Plaintiff in the Eastern District of Pennsylvania.

87.     Defendant has advertised, offered for sale or distribution its respective products, including services.

88.     Defendant, CONA, has engaged in unfair trade practices, unfair methods of competition, and has practiced other unfair or deceptive acts or practices directly or indirectly adversely affecting the Plaintiff, as described above.

89.     Defendant is in violation of 73 P.S. § 201-2 (4)(xxi):  "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding"

90.     Certainly the improper charging of late charges, the wrongful crediting of payments, and the resulting increments charged to the Plaintiff's account are inexplicable, creating the reasonable belief by the consumer that such charges are correct, particularly because of the very strong position of mortgagors as perceived by the "least sophisticated consumer", very definitely creating a likelihood of confusion and misunderstanding.

30

91.     The acts and practices include, but are not limited to:

a.     Making false or misleading statements of fact, by silence or otherwise;

b.     Knowingly misrepresenting that such late fees were permissible, lawful and contractually appropriate, and that the attendant charges and miscrediting, the application, of payments;

c.     "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding", as described above.

d.     Engaging in any other conduct deemed to constitute unfair trade practices, unfair methods of competition, or other unfair or deceptive acts or practices.

92.     73 P.S. § 2270.4(b)(5) provides as follows:

a.     "(5) A creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:

"(ii) The false representation of the character, amount or legal status of any debt.

"(x) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

"(xi)    (6) A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:

"(i) The collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

31

b.      It is Plaintiff's contention that the charging of the late fees during the post-bankruptcy petition era during which Plaintiff made current mortgage payments, in full, and the resultant mis-application of payments, addition of other charges therefrom constitute violations of the aforestated provisions of 73 P.S. § 2270.4(b)(5).

93.     In any event, the wrongful charges illuminated above are not authorized by law or contract, and the attempt to collect fees to which there is no entitlement is clearly unfair, unconscionable, and constitutes "false representations and deceptive" practices.

WHEREFORE, Plaintiff prays this Honorable Court find in favor of plaintiff and against CONA and grant compensatory damages, statutory damages, treble damages, punitive damages, costs, interest and attorney's fees.

Respectfully submitted:

Stuart A. Eisenberg, Esquire
Carol B. McCullough, Esquire
MCCULLOUGH EISENBERG, LLC
65 West Street Road, A-105
Warminster, PA 18974
Tel. 1-215-957-6411
Fax. 1-215-957-9140

January 24, 2012

32